# STATE OF MICHIGAN

# COURT OF APPEALS

TAMMY SUNDRLA,

        Plaintiff-Appellant,

v

REPUBLIC PARKING SYSTEM, INC.,

        Defendant-Appellee.

UNPUBLISHED
April 24, 2018

No. 337582
Washtenaw Circuit Court
LC No. 15-000358-NO

Before: MURPHY, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant, Republic Parking System, Inc., pursuant to MCR 2.116(C)(10) and the open and obvious danger doctrine. We affirm.

This case arises out of a slip and fall on an icy step that occurred in the enclosed concrete stairwell of a parking ramp owned by defendant as plaintiff was descending the stairs between the seventh and sixth floor of the eight-floor structure. The seventh floor where plaintiff parked was covered, but the sides of the ramp were open and exposed to the elements. There was an open doorway leading from the parking area to the stairwell, and while the stairwell was enclosed, it was still susceptible to the cold, making ice a possibility as to any water that was tracked in by defendant's patrons. Plaintiff testified that water would also leak or drip into the stairwell from some type of opening at the very top of the ramp. We shall discuss additional evidence below. On appeal, plaintiff argues that there existed genuine issues of material fact regarding whether the icy step or stair constituted an open and obvious danger and whether any special aspects of the hazard supported liability, assuming that the danger was open and obvious.

We review de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court set forth the principles applicable to examination of a summary disposition motion brought pursuant to MCR 2.116(C)(10):

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the

-1-

pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

Our Supreme Court in *Hoffner*, 492 Mich at 459-460, provided the following analytical overview with respect to the law governing premises liability, explaining:

The law of premises liability in Michigan has its foundation in two general precepts. First, landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land. Second, and as a corollary, landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land. These principles have been used to establish well-recognized rules governing the rights and responsibilities of both landowners and those who enter their land. Underlying all these principles and rules is the requirement that both the possessors of land and those who come onto it exercise common sense and prudent judgment when confronting hazards on the land. These rules balance a possessor's ability to exercise control over the premises with the invitees' obligation to assume personal responsibility to protect themselves from apparent dangers.

The starting point for any discussion of the rules governing premises liability law is establishing what duty a premises possessor owes to those who come onto his land. With regard to invitees,[1] a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land. Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect. [Citations omitted.]

Consideration regarding whether a danger or defect is open and obvious is an integral aspect of defining the duty owed by an invitor to an invitee. *Hoffner*, 492 Mich at 460. A possessor of land does not owe a duty to protect or warn an invitee relative to dangers that are open and obvious. *Id.* This is "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id.* at 461.

---

[1] There is no dispute here that plaintiff was an invitee.

"Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. The required analysis involves examination of the objective nature of the condition of the premises. *Id.* It is well established that wintry conditions can be characterized as open and obvious, and "Michigan courts thus ask whether the individual circumstances, including the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger." *Id.* at 464.

There have been several Supreme Court orders that must be taken into consideration. In *Ragnoli v North Oakland-North Macomb Imaging, Inc*, 500 Mich 967 (2017), our Supreme Court reversed a decision by this Court, ruling that "[t]he trial court correctly held that, notwithstanding the low lighting in the parking lot, the presence of wintery weather conditions and of ice on the ground elsewhere on the premises rendered the risk of a black ice patch 'open and obvious such that a reasonably prudent person would foresee the danger' of slipping and falling in the parking lot." (Citation omitted.)

In *Cole v Henry Ford Health Sys*, 497 Mich 881 (2014), the Supreme Court similarly stated:

> Here, the so-called "black ice" was detected by four other witnesses who viewed the premises after the plaintiff's accident. There were several patches of ice evident in the area where the plaintiff fell. In addition, there were numerous indicia of a potentially hazardous condition being present, including seven inches of snow on the ground, some precipitation the previous day, and a recent thaw followed by consistent temperatures below freezing. A reasonably prudent person would foresee the danger of icy conditions on the mid-winter night the plaintiff's accident occurred. [Citation omitted.]

In *Janson v Sajewski Funeral Home, Inc.*, 486 Mich 934, 935 (2010), the Supreme Court ruled:

> "[B]lack ice" conditions [are rendered] open and obvious when there are indicia of a potentially hazardous condition, including the specific weather conditions present at the time of the plaintiff's fall. Here, the slip and fall occurred in winter, with temperatures at all times below freezing, snow present around the defendant's premises, mist and light freezing rain falling earlier in the day, and light snow falling during the period prior to the plaintiff's fall in the evening. These wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection. [Citations and quotation marks omitted.]

In *Janson*, *id.*, the Supreme Court relied on and favorably cited this Court's opinion in *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474; 760 NW2d 287 (2008), and specifically page 483 of the opinion, where the *Slaughter* panel stated:

> The overriding principle behind the many definitions of black ice is that it is either invisible or nearly invisible, transparent, or nearly transparent. Such

definition is inherently inconsistent with the open and obvious danger doctrine. Consequently, we decline to extend the doctrine to black ice *without evidence that the black ice in question would have been visible on casual inspection before the fall or without other indicia of a potentially hazardous condition.* [Emphasis added.]

In light of this emphasized language, and considering the Supreme Court's orders, the question here is whether there exists a genuine issue of material fact regarding whether the icy step in the stairwell would have been visible on casual inspection, and plaintiff's deposition testimony indicated that it was not visible on casual inspection so we shall not explore that avenue, *or* whether there were other indicia of the potential for ice in the stairwell.

We now turn to the pertinent evidence regarding whether there were indicia of the potential for an icy step in the stairwell. Plaintiff testified that the slip and fall occurred in the month of December at approximately 9:30 a.m. She described the weather as "bitterly cold," wet, and actively snowing. Plaintiff indicated that her vehicle slid on patches of black ice on the roadway during her commute to work. She also observed snow and moisture near the area where she parked her vehicle on the seventh floor of the ramp. Plaintiff further testified that the steps in the stairwell were "wet in some areas." And she stated that "[w]ater would always leak" into the stairwell from the top of the ramp. Additionally, plaintiff did not see any salt on the stairs.

Accordingly, even though the stairwell was enclosed, the steps were still subject to getting wet and icing over from the cold, and considering plaintiff's own testimony about the regular water intrusion and the bitterly cold temperature on the day of the accident, the "wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection." *Janson,* 486 Mich at 935. Thus, we cannot conclude that the trial court erred in determining that the alleged hazard was open and obvious as a matter of law.

On the issue of special aspects, an exception to the duty owed for open and obvious dangers arises when special aspects of a condition make even an open and obvious risk unreasonable. *Hoffner,* 492 Mich at 461. Special aspects exist when an open and obvious hazard remains unreasonably dangerous or when it is effectively unavoidable. *Id.* at 461-463. The *Hoffner* Court further explained:

[W]hen confronted with an issue concerning an open and obvious hazard, Michigan courts should hew closely to the principles previously discussed. It bears repeating that exceptions to the open and obvious doctrine are *narrow* and designed to permit liability for such dangers only in *limited,* extreme situations. Thus, an "unreasonably dangerous" hazard must be just that—not just a dangerous hazard, but one that is *unreasonably* so. And it must be *more than* theoretically or retrospectively dangerous, because even the most unassuming situation can often be dangerous under the wrong set of circumstances. An "effectively unavoidable" hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances. A general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise

to the level of a "special aspect" characterized by its *unreasonable risk of harm.* [*Id.* at 472-473 (citations omitted; emphases in original).]

It is only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm that can serve to remove at condition from the open and obvious danger doctrine. *Id.* at 472 n 38.

In the instant case, the icy condition of the step in the stairwell was not effectively unavoidable because plaintiff was not required to confront the condition. An elevator was available to her. Plaintiff claimed that she never used the elevator because it was usually broken; however, she did not recall whether the elevator was working on the day of the slip and fall. And there was evidence that the elevator was indeed working on that particular day. Moreover, there is no indication that the step was icy from one end to the other, so plaintiff could have shifted to another part of the step. In addition, plaintiff could have parked on a lower floor of the parking garage. Plaintiff testified that she specifically parked on the seventh floor to protect her vehicle. However, that was her personal choice. Plaintiff could have even walked down to street level using the ramp itself and not the stairwell. Therefore, the icy stairway was not effectively unavoidable.

Second, the icy step was not unreasonably dangerous as contemplated in *Hoffner*. Even if we accepted plaintiff's argument on appeal that both the stairwell step and a handrail were icy,[2] she has failed to demonstrate that the situation presented a uniquely high likelihood of harm or severity of harm. This case does not present an extreme situation, as compared to, for example, the 30-foot-deep pit hypothetical given in *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 518; 629 NW2d 384 (2001). The trial court did not err in concluding that no special aspect existed as a matter of law.

Affirmed. Having fully prevailed on appeal, we award taxable costs to defendant under MCR 7.219.

/s/ William B. Murphy
/s/ Kathleen Jansen
/s/ Brock A. Swartzle

---

[2] While an incident report indicated that there was some ice on the handrails, plaintiff did not testify that an icy handrail played a role in her slip and fall.